# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALEXANDER SANCHEZ, | ) | 3:19-CV-1314 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEVEN M. CHAPMAN; DAVID A. | ) | |
| LUKE; DAWN PAGAN; OFFICER | ) | March 4, 2022 |
| VAZQUEZ; OFFICER WILKINSON, | ) | |
| *Defendants*. | ) | |

## RULING AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiff Alexander Sanchez brings this action against three Connecticut State Police officers, Steven M. Chapman, David A. Luke, and Dawn Pagan (together, "the State Defendants"), and two officers with the Meriden Police Department, Raynick Vazquez and Brian Wilkinson (together, "the Municipal Defendants" and collectively with the State Defendants, "Defendants"). Plaintiff has alleged a violation of 42 U.S.C. § 1983, claiming that Defendants violated his Fourth Amendment right to be free from excessive force by pushing his face against a wall and forcing him to the ground while executing a search warrant at an apartment in Meriden, Connecticut in 2017.

Defendants seek summary judgment, contending primarily that the doctrine of qualified immunity bars Plaintiff's § 1983 claim. Plaintiff disagrees, maintaining that there are genuine issues of material fact for a jury to resolve. For the following reasons, the Court agrees with Defendants, therefore enters judgment in their favor.

## I.    FACTUAL BACKGROUND

The record reveals the following facts, which are undisputed unless otherwise noted. The three State Defendants and two Municipal Defendants were members of the Statewide Narcotics

Task Force. State Defs.' LR 56 Statement, ECF No. 32-2 ¶ 2. Defendants received credible information that crack cocaine and heroin were being sold from an apartment in Meriden, which they verified by conducting a controlled purchase. Mun. Defs.' LR 56 Statement, ECF No. 31-2 ¶¶ 1–2. Accordingly, they obtained a search and seizure warrant for the apartment. *Id.* ¶ 3.

On April 19, 2017, Defendants met to execute the search warrant, all clearly identified with raid gear and police badges. *Id.* ¶¶ 4–5. Although they obtained a key fob for the apartment door, they were unable to enter the apartment because the deadbolt was engaged, so they continued to knock on the door. State Defs.' LR 56 Statement ¶¶ 6–7. A female occupant responded and eventually opened the door. *Id.* ¶¶ 7, 9–10. Defendants loudly announced their presence as they moved quickly through the apartment. *Id.* ¶ 11. Plaintiff, who was at the time sixteen years old,[1] was inside the apartment. Pl.'s LR 56 Statement pt. B, ECF Nos. 33-1 & 34-1 ¶ 5.

Upon entering the apartment, Defendants quickly noticed that one room off the hallway contained "weapons hanging on the wall," including two M16 assault type rifles, "swords, handguns, and knives." Mun. Defs.' LR 56 Statement ¶ 18; State Defs.' LR 56 Statement ¶ 14. They also noticed "several knife edged type weapons lying unsecured on the floor of the [room] and in close proximity to the hallway door." Mun. Defs.' LR 56 Statement ¶ 19; State Defs.' LR 56 Statement ¶ 14. Defendants further noticed the sound of a toilet flush and, upon opening the bathroom door, found Plaintiff and another occupant inside.[2] Mun. Defs.' LR 56 Statement ¶¶ 24–26; State Defs.' LR 56 Statement ¶¶ 17–18; Wilkinson Aff., ECF No. 31-3, Ex. 1 at 3.

---

[1] At the time, Plaintiff was undergoing treatment for an unspecified adjustment disorder and disruptive mood dysregulation disorder. Pl.'s LR 56 Statement pt. B ¶ 5. Plaintiff conceded at oral argument that there was no evidence suggesting that Defendants knew or had reason to know of his mental health conditions before executing the warrant.

[2] Plaintiff disputes that Defendants heard the sound of a toilet flush and that he was found inside the bathroom, maintaining that these facts were not contained in any police report. Pl.'s LR 56 Statement, pt. A ¶¶ 17–18, 24–26. However, an investigative report prepared by Defendant Wilkinson and signed by Defendant Luke contains these facts. Wilkinson Aff., ECF No. 31-3, Ex. 1 at 1–3. Additionally, at oral argument, Plaintiff conceded that whether the toilet flushed or not is immaterial.

It is undisputed that Defendant Wilkinson[3] "immediately gave [Plaintiff] verbal commands to stop moving and put his hands behind his back."  Wilkinson Aff., ECF No. 31-3 ¶ 13; State Defs.' LR 56 Statement ¶ 19.  It is further undisputed that Plaintiff refused to comply with this command.  Instead, he "immediately began to yell obscenities," "continued to ignore verbal commands," and "was verbally abusive to the officers."  Mun. Defs.' LR 56 Statement ¶ 28; State Defs.' LR 56 Statement ¶ 21.  He also attempted to walk past Defendants toward the room containing the weapons.  State Defs.' LR 56 Statement ¶ 22.

At that point, Wilkinson "grabbed [Plaintiff] by the arm and pushed him against the wall in [an] attempt to control him for detainment and handcuffing."  Mun. Defs.' LR 56 Statement ¶ 29.  When Plaintiff continued to resist Wilkinson's commands, Wilkinson brought him to the ground and handcuffed him.  *Id.* ¶¶ 30–31.  After being handcuffed, Plaintiff continued to use profanities toward the officers and make threatening statements.  *Id.* ¶ 48.

Plaintiff was then brought to the living room, where all of the other apartment occupants had been moved, and was directed to sit on the floor because there were no chairs in the room.  State Defs.' LR 56 Statement ¶ 24; Mun. Defs.' LR 56 Statement ¶ 49.  When Plaintiff refused to sit on the floor as directed, Wilkinson "utilized a controlled foot sweep to seat [Plaintiff] on the floor."  State Defs.' LR 56 Statement ¶ 25.

The parties dispute the severity of Plaintiff's injuries resulting from these encounters. Defendants contend that Plaintiff sustained "a small scratch and bleeding to his nose area," while Plaintiff suggests that his injuries were not "as minimal as alleged" by Defendants.  Mun. Defs.' LR 56 Statement ¶ 32; Pl.'s LR 56 Statement pt. A ¶ 32.  Rather, he identifies his injuries as:

---

[3] The parties' briefing appeared to present a dispute on the question of which Defendant used the force in question against Plaintiff.  At oral argument, however, Plaintiff's counsel conceded that there was no dispute that it was Wilkinson who gave the commands and used the force in question.

"[b]leeding from [his] nose, facial and nose bruising, head trauma, [and] loss conscious[.]"  Mun. Defs.' Ex. C, Pl's Resp. to Interrogs. at 4.  Defendants aver that Plaintiff refused medical treatment onsite both directly and through his mother, which Plaintiff denies.  State Defs.' LR 56 Statement ¶ 23; Mun. Defs.' LR 56 Statement ¶¶ 33, 51–54; Pl.'s LR 56 Statement re: State Defs. ¶ 23; Pl.'s LR 56 Statement re: Mun. Defs. ¶¶ 33, 52–54.  Although the record reflects that Plaintiff sought treatment in an emergency room later the same day, the document submitted by Plaintiff appears to be an incomplete hospital discharge summary and does not indicate any injuries with which Plaintiff might have been diagnosed.  Opp. to Mot. for Summ. J., Ex. 1, ECF No. 33-2.  Moreover, Plaintiff's briefing does not delineate between injuries he might have received from the scuffle before he was handcuffed and injuries he might have received as a result of the foot sweep.  At oral argument, Plaintiff clarified that his claim rests substantially on the incident in the hallway that preceded his handcuffing.

The parties also dispute the evidence recovered during the course of the search, such as a roll of U.S. currency, drug paraphernalia, and a K9 alert indicating the detection of narcotics.  Mun. Defs.' LR 56 Statement ¶¶ 38–43; Pl.'s LR 56 Statement, pt. A ¶¶ 38–43.  Plaintiff contends this evidence was not contained in any police reports, but the report attached to the Wilkinson Affidavit discusses all of this information.  Wilkinson Aff., ECF No. 31-3, Ex. 1 at 4.  In addition, Plaintiff alleged in the amended complaint that one of the Defendants issued him a Juvenile Summons requiring him to report to Juvenile Court, which was signed and accepted by his mother during the search.  Compl. ¶ 8.  Defendants' LR 56 Statements do not address this fact.

## II.    PROCEDURAL HISTORY

In 2019, Plaintiff filed the present action, alleging that Defendants "beat [Plaintiff] about his face and head, inflicting cuts, scratches, contusions and bruises and causing him to suffer loss

of blood, pain, and terror." Compl. ¶ 9. In his complaint, Plaintiff acknowledged that he "was cursing at [Defendants] because of his fear and his medical disabilities," but maintained that the force employed against him was unreasonable and excessive because "he was not physically threatening or resisting them in any way." *Id.* ¶ 10. He brought one count of excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983. *Id.* ¶ 11. Plaintiff also brought one count of assault and battery under Connecticut common law. *Id.* Following a period of discovery, the State and Municipal Defendants each moved for summary judgment. ECF Nos. 31, 32. At oral argument on the present motions, Plaintiff informed the Court that he is withdrawing the assault and battery count of his Complaint.

## III.    LEGAL STANDARD

### A.    Fed. R. Civ. P. 56(a)

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." With respect to materiality, a fact is "material" only if a dispute over it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, a movant "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate *specific facts* showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (emphasis added) (quoting *Celotex Corp.*, 477 U.S. at 324). If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

B. <u>42 U.S.C. § 1983</u>

"Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999); *see also* 42 U.S.C. § 1983. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations and internal quotation marks omitted). Thus, for a § 1983 claim to survive a defendant's motion for summary judgment, a plaintiff must show a genuine issue of material fact regarding "the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (summary order).

C.  Excessive Force and Qualified Immunity

The doctrine of qualified immunity shields governmental officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability while they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The United States Supreme Court has established a two-pronged test governing dismissal of a civil action on qualified immunity grounds.  "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. . . . Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232.  A court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.  If a court determines that one prong establishes that a defendant is entitled to qualified immunity, then "it need not reach the other" prong. *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014).

The first prong of the qualified immunity analysis requires a court to determine whether a defendant's conduct violated a constitutional right, in this case, Plaintiff's Fourth Amendment right to be free from excessive force.  "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989) (noting

that the Fourth Amendment's standard for excessive force is an objective inquiry)).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment . . . requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Moreover, the degree of force employed by a police officer must be assessed for reasonableness with regard to proportionality.  "The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of *some* degree of force, but it does not give the officer license to use force without limit.  The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000) (emphasis in original).  In addition, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.  "In sum, the standard to be applied in determining whether the amount of force used exceeded the amount that was necessary in the particular circumstances is reasonableness at the moment." *Rogoz v. Hartford*, 796 F.3d 236, 247 (2d Cir. 2015) (internal quotation marks omitted).

The second prong of the qualified immunity analysis requires a court to determine "the objective legal reasonableness of the [defendant's] action, assessed in light of the legal rules that

were clearly established at the time it was taken." *Pearson*, 555 U.S. at 243–44 (citations and internal quotation marks omitted).  When considering whether an officer's actions were objectively reasonable in light of the law clearly established at the time, the court should ask whether the state of the law at the time of the alleged conduct was sufficiently particularized that it "gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (requiring the right to have been clearly established "in a more particularized" sense, such that "a reasonable official would understand that what he is doing violates that right.").  Accordingly, a defendant will be entitled to qualified immunity, notwithstanding conduct that violated a plaintiff's clearly established constitutional right, if the state of the law was not clearly established such that an officer's mistaken belief that their actions did not violate the plaintiff's constitutional rights was objectively reasonable.  *Loria v. Gorman*, 306 F.3d 1271, 1282 (2d Cir. 2002); *see also Pearson*, 555 U.S. at 231, 244 (noting that "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact," so long as the mistake is objectively reasonable (citation and internal quotation marks omitted)).  In a particularized factual and legal circumstance, "[a]n officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice[.]" *Lennon v. Miller*, 66 F.3d 416, 420–21 (2d Cir. 1995).

Courts in this circuit have aptly noted that, in the context of a claim of excessive force under the Fourth Amendment, "the issue of qualified immunity necessarily overlaps considerably with the question of liability on the underlying claim, as both require an assessment of the objective reasonableness of the arresting officer's conduct." *Diaz v. Hartford Police Dep't*, No. 3:18-CV-1113 (KAD), 2021 WL 1222187, at *6 (D. Conn. Mar. 31, 2021).  *See also O'Bert ex rel. Est. of*

*O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) ("[i]n Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry made on the merits" (citation and quotation marks omitted)); *Piper v. Elmira*, 12 F. Supp. 3d 577, 591 (W.D.N.Y. 2014) (noting that, "in excessive force cases, the qualified immunity and Fourth Amendment analyses often overlap and present a single question: [w]hether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful" (citation and internal quotation marks omitted)).  Accordingly, Defendants will be entitled to summary judgment if the Court concludes that there is no genuine dispute with respect to the facts and circumstances supporting the objective reasonableness of their actions.

## IV.    DISCUSSION

Defendants raise two arguments in support of their motions for summary judgment.  First, Defendants Chapman, Luke, Pagan, and Vazquez contend that they did not personally participate in Wilkinson's use of force, and therefore cannot be held liable under § 1983.  Second, all Defendants contend that they did not violate Plaintiff's Fourth Amendment right because any force employed was objectively reasonable, and they thus are entitled to qualified immunity.  Plaintiff disagrees with both of Defendants' arguments, maintaining that this case presents factual questions for a jury to decide.  The Court addresses these issues in turn.

### A.    Personal Participation by Defendants Luke, Pagan, Chapman, and Vazquez

There is no genuine dispute that Wilkinson was the officer who pushed Plaintiff against the wall, brought him to the floor to handcuff him, and then used the foot sweep to force him to sit.  *See supra* footnote 2.  The other four Defendants attest that they did not touch Plaintiff. Accordingly, those Defendants will be entitled to summary judgment unless Plaintiff raises a

genuine issue of specific, material fact to indicate that those Defendants nevertheless "personally participated" in any constitutional violation committed by Wilkinson.

Section 1983 "imposes liability only upon those who actually cause a deprivation of rights"; accordingly, "personal involvement of [the] defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Blyden*, 186 F.3d at 264 (quoting *Wright*, 21 F.3d at 501). Specifically, liability under § 1983 requires "personal participation by one who has [actual] knowledge of the facts that rendered the conduct illegal." *Provost v. Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001).

But a police officer also has "an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted). If the officer "observes or has reason to know" that a violation of a constitutional right has been committed by a fellow law enforcement officer, then the observing officer's failure to intervene to prevent the unconstitutional conduct may constitute "personal participation" to support liability under § 1983. *See id.* (citations omitted). However, "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id.*; *see also O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (police officers not liable where their fellow officer's unconstitutional conduct happened so quickly that the officers "had no realistic opportunity to attempt to prevent" the conduct); *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 296 (N.D.N.Y. 2018) ("when considering the reasonableness of any opportunity to intervene, one must consider

both (a) the duration of the constitutional violation, and (b) the defendant's presence and proximity during the use of the constitutional violation").

Turning to the facts of the present case, the Court agrees with the argument of the State Defendants and Defendant Vazquez that they did not have a realistic opportunity to intervene to prevent Wilkinson's conduct. First, the events transpired too quickly for them to have a realistic opportunity to prevent Wilkinson from pushing Plaintiff against the wall or bringing him to the ground in the hallway near the room with the weapons. Among these Defendants, Defendant Luke appears to have been closest to the situation, as he attests that he observed Wilkinson give Plaintiff commands to stop and put his hands behind his back soon after entering the apartment and immediately upon seeing Plaintiff in the bathroom. Luke Aff., ECF No. 32-3 ¶ 18. When Plaintiff refused to comply and moved toward the room with the weapons, Defendant Luke observed Wilkinson "quickly" bring Plaintiff to the ground to handcuff him, during which encounter Plaintiff's face struck the wall. *Id.* ¶ 21; *see also* Wilkinson Aff., ECF No. 31-3 ¶ 18 ("I responded to Sanchez's aggression and resistance[,] quickly bringing him to the ground to affect handcuffing techniques and secure him.").

Plaintiff does not raise any specific dispute regarding the timeline of events to suggest that Defendant Luke could have anticipated any unconstitutional conduct by Wilkinson and intervened to prevent it. For example, Plaintiff does not point to any facts indicating that the scuffle was "of sufficient duration to support a conclusion that an officer who stood by without trying to assist [him] became a tacit collaborator." *See O'Neill*, 839 F.2d at 11–12. Nor does Plaintiff suggest that Wilkinson announced his plan, such that Luke could have interceded before Plaintiff was taken to the ground. Instead, Plaintiff's defiance to Wilkinson's commands was immediate, requiring swift action from Wilkinson in order to prevent Plaintiff from reaching the nearby room

containing the weapons.  In this sense, there is no genuine dispute that the chain of events—from Wilkinson's commands to Plaintiff's defiance and movement to Wilkinson's takedown—transpired "in such rapid succession that" Luke had "no realistic opportunity to attempt to prevent" Wilkinson's actions.  *See id.* at 11.  No reasonable factfinder could conclude otherwise.

Additionally, there is no genuine dispute that any Defendants other than Luke were close enough in proximity to observe, let alone intervene in, the scuffle that preceded Wilkinson handcuffing Plaintiff.  Rather, the only reasonable inference a jury could draw is that Defendants Pagan, Chapman, and Vazquez were engaged in the tasks necessary to secure other areas of the apartment and the people within it at the time of Wilkinson's actions.  *See Curley v. Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) (concluding that the defendant officers did not personally participate in the alleged unconstitutional conduct because they were occupied dispersing a crowd at the time). For example, Defendant Pagan attests that although she heard officers giving verbal commands to an individual in the hallway, her job was to secure the female occupant who had opened the door while the other Defendants "continued to clear the residence."  Pagan Aff., ECF No. 32-5 ¶ 13. Defendant Chapman, who also attested to only hearing verbal commands from officers, was responsible for clearing rooms in the home and had no verbal or physical interactions with Plaintiff. Chapman Aff., ECF No. 32-4 ¶¶ 13, 19, 25.  Defendant Vazquez served as a translator during the search, as he identified himself as a police officer in both English and Spanish before entering the apartment and delivered all participants their *Miranda* rights in Spanish.  His affidavit does not mention even hearing Wilkinson's verbal commands.  Vazquez Aff., ECF No. 31-4 ¶ 7; Wilkinson Aff., ECF No. 31-3 ¶¶ 10, 15.  Plaintiff does not contest the specific attested locations and tasks of Pagan, Chapman, and Vazquez during the relevant events, except to admit that "only some" Defendants "had physical contact" with him—a contention he later narrowed to only Wilkinson.

Pl.'s LR 56 Statement re: State Defs.' LR 56 Statement ¶ 26.  Based on this evidence, there is no genuine issue of fact concerning whether Pagan, Chapman, and Vasquez had a reasonable opportunity to intervene in Wilkinson's use of force in the hallway before Plaintiff was handcuffed.

Turning to consider Wilkinson's subsequent foot sweep of Plaintiff in the living room, Plaintiff's briefing regarding whether the foot sweep amounts to excessive force is sparse, at best. Plaintiff acknowledged at oral argument that his excessive force claim centers on the actions of Wilkinson in the hallway, not on the foot sweep in the living room.  In any event, though, the foot sweep situation also appeared to have evolved quickly, and Plaintiff has not proffered any evidence to suggest that Defendants Chapman, Pagan, or Luke would have had time to intervene in the foot sweep either before or while it happened.

Accordingly, for the reasons described above, the Court concludes that no reasonable jury could find that Defendants Luke, Pagan, Chapman, and Vazquez failed to intervene or otherwise personally participated in Wilkinson's conduct.  However, even if Defendants Chapman, Luke, Pagan, and Vazquez had personally participated in Wilkinson's use of force against Plaintiff, they would be entitled to qualified immunity for the reasons discussed below, which would apply with equal or greater force to them as to Wilkinson.  *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) ("To recover on [a theory of failure to intervene], of course, a plaintiff must still overcome the hurdle of qualified immunity.  A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known." (citations and internal quotation marks omitted)).

B.  Qualified Immunity With Respect to Defendant Wilkinson

As noted, the application of qualified immunity to Plaintiff's excessive force claim requires a single inquiry into the objective reasonableness of Wilkinson's use of force under the circumstances.  Several factors inform this inquiry, including: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396; *accord Sullivan*, 225 F.3d at 165.

Officers who are executing a search warrant for contraband "have the authority to detain the occupants of the premises while a proper search is conducted."  *Michigan v. Summers*, 452 U.S. 692, 705 (1981).  "Inherent in *Summers*' authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention."  *Muehler v. Mena*, 544 U.S. 93, 98–99 (2005).  Importantly, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Graham*, 490 U.S. at 396.

With these principles in mind, the Court concludes that, even construing the disputed facts in the light most favorable to Plaintiff, no reasonable jury could conclude that Wilkinson's use of force was unreasonable in these circumstances.  All of the *Graham* factors support this conclusion. With respect to the severity of the crime at issue, the record before the Court concerning the nature of the crime at issue is relatively thin.  Plaintiff does not dispute that Defendants came to the apartment on the day in question with a warrant to search for evidence related to the possession and sale of crack cocaine and heroin.  At least one district court in this circuit has reasoned that drug-related crimes, though not inherently involving violence, "are serious felonies[.]"  *Bongiorno v. Perilli*, 537 F. Supp. 3d 367, 375–76 (N.D.N.Y. 2021) (holding that the force employed to

"slam" the plaintiff, who had an outstanding arrest warrant for drug crimes, to the ground for handcuffing was reasonable under the Fourth Amendment).  This factor only slightly weighs in favor of finding that Wilkinson's actions were reasonable.

The second factor—whether the suspect poses an immediate threat to the officers— strongly supports a finding of reasonableness.  It is undisputed that, at the time Defendants entered the apartment, Plaintiff was standing near a room that contained a combination of assault rifles, swords, handguns, and unsecured knives.  It is also undisputed that, rather than comply with Wilkinson's directives to stop and put his hands behind his back, Plaintiff "made attempts to continue toward the room containing the weapons[.]"  State Defs.' LR 56 Statement ¶ 22.  Plaintiff disputes only the State Defendants' characterization of this action as "aggressive[.]"  Pl.'s LR 56 Statement pt. A ¶ 22.  However, even construing the facts in the light most favorable to Plaintiff, it remains undisputed that he moved toward the room containing a variety of unsecured deadly weapons.  Notwithstanding the manner with which he moved toward the room, the undisputed facts undoubtedly indicate that he presented an imminent risk to the safety of everyone present in the apartment.

Plaintiff's efforts to resist the officers likewise demonstrates the reasonableness of Wilkinson's use of force.  It is undisputed that Plaintiff refused to comply with Wilkinson's directives to stop and put his hands behind his back.  Instead, Plaintiff admits, he "immediately began to yell obscenities," "continued to ignore verbal commands," and "was verbally abusive to the officers."  Mun. Defs.' LR 56 Statement ¶ 28; State Defs.' LR 56 Statement ¶ 21; Pl.'s LR 56 Statement re: Mun. Defs.' LR 56 Statement ¶ 28 & Pl.'s LR 56 Statement re: State Defs.' LR 56 Statement ¶ 21 (admitting corresponding paragraphs of Mun. Defs.' and State Defs.' LR 56 Statements).  Significantly, he then attempted to walk past Defendants toward the room containing

the weapons.   State Defs.' LR 56 Statement ¶ 22.   In addition, it is undisputed that Plaintiff

continued this behavior after he was handcuffed.   Specifically, he "continued to yell profanities

and taunt the officers," continued to "make threatening statements," and refused to sit on the floor

in a space where all occupants could be detained during the search.   Mun. Defs.' LR 56 Statement

¶¶ 48, 50; State Defs.' LR 56 Statement ¶¶ 24–25.

Courts in this district have repeatedly reasoned that a suspect's attempt to resist arrest or

threaten a police officer justifies the officer's use of a limited degree of force.   *See, e.g.*, *Massaro*

*v. Trumbull*, 525 F. Supp. 2d 302, 305, 307–08 (D. Conn. 2007) (holding that defendant officer

who "grabbed [the plaintiff's] wrist and shoulder, pushed him to the ground, and handcuffed him"

while executing a search warrant, causing him to suffer a mild contusion, did not employ excessive

force because the officer "was faced with a tense and uncertain situation involving [the plaintiff,]

a convicted felon and had to make a split-second decision"); *Bauer v. Hartford*, No. 3:07-cv-1375

(PCD), 2010 WL 4429697, at *11 (D. Conn. Oct. 29, 2010) (holding that defendant officer's use

of force by grabbing the plaintiff's arms "so forcefully that she sustained black and blue bruises

on her arms" was nonetheless objectively reasonable because the plaintiff "had repeatedly resisted

and ignored police requests prior to her arrest," leading the defendant officer to reasonably believe

"that she would resist arrest as well, and that a minimal amount of force was necessary to gain

control of her to effectuate the arrest"); *Stanley v. Meier*, No. 3:09-cv-1643 (VLB), 2012 WL

2367386, at *5 (D. Conn. June 21, 2012) (holding that the defendant officers' open-palm strikes

to the plaintiff's head were objectively reasonable because "the plaintiff was combative and

refusing to comply with orders," the officers "could have viewed [the plaintiff's] conduct as

threatening to their safety," and the force employed was "limited"); *Lagasse v. Waterbury*, No.

3:09-cv-391 (VLB), 2011 WL 2709749, at *8 (D. Conn. July 12, 2011) (holding that the defendant

officers' palm strikes and use of an arm bar to defend themselves "and overcome [the plaintiff's] resistance to effect his restraint" were objectively reasonable because the use of force was "limited in proportion to [the] [p]laintiff's physical resistance to being handcuffed"). Similarly, in this case there is no genuine dispute that Plaintiff resisted arrest and refused to comply with Wilkinson's directives to stop.

Moreover, Plaintiff's refusal to comply with Wilkinson's directives heightened the imminence of the threat he presented as he moved toward the room with the weapons. Faced with such noncompliance, Wilkinson could not realistically prevent him from moving within reach of the deadly weapons in that room absent some degree of force. *See Bongiorno*, 537 F. Supp. 3d at 376 ("Given Plaintiff's sudden attempt to flee . . . Defendant could not realistically prevent Plaintiff's escape without using some amount of force.); *see also Tracy v. Freshwater*, 623 F.3d 90, 97 (2d Cir. 2010) (officer's use of a flashlight to strike a fleeing suspect who "had appeared to fail to comply with a direct order and to instead actively resist arrest" was reasonable).

In addition, the Court finds no genuine issue of material fact with respect to the proportionality of Wilkinson's use of force. Although a suspect resisting arrest typically justifies the use of a certain degree of force, "it does not give the officer license to use force without limit. The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan*, 225 F.3d at 165–66. In this case, Wilkinson did not use significant force, which would have been justified only in circumstances involving a higher degree of noncompliance or immediate threat. *See, e.g.*, *Tracy*, 623 F.3d at 98–99 (holding that the defendant officer's use of pepper spray would be unreasonable if found by a jury to have occurred after the plaintiff had been handcuffed and

had stopped resisting).  Rather, Wilkinson used only the force of his person to push Plaintiff against the wall and then bring him to the ground quickly for handcuffing.

Moreover, the relatively mild nature of Plaintiff's injuries—which, construing the record in his favor, included cuts on his face, a brief period of lost consciousness, and an undiagnosed head injury that are more than *de minimis*—indicate that the degree of force employed was reasonably proportionate to the circumstances presented by a noncompliant and resisting suspect who was moving toward a room containing multiple dangerous weapons.  *See Yang Feng Zhao v. New York*, 656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009) (noting that "the extent and nature of the injury . . . is typically relevant . . . because it is probative of the amount and type of force actually used by the arresting officers, and that in turn is likely to reflect on the reasonableness of that force"); *Bauer*, 2010 WL 4429697, at *11 ("Moreover, although long-lasting or severe injuries are not necessary to prevail on an excessive force claim, minor injuries, such as those sustained by [the p]laintiff, also indicate that the amount of force used was not excessive.").

Plaintiff contends that the record raises a genuine dispute of material fact regarding Defendants' use of excessive force because "he was verbally abusive but did not challenge them." Opp. to Mot. for Summ. J. at 1.  To the extent Plaintiff argues that verbal aggression, standing alone, does not render the use of force reasonable, he undermines this argument by flatly admitting that his verbal aggression was accompanied by at least some physical resistance.  Specifically, he admits that he resisted Wilkinson's attempts to put him in handcuffs.  He also continued to make "threatening statements" even after he was handcuffed.  Mun. Defs.' LR 56 Statement ¶¶ 28–29, 48; Pl.'s LR 56 Statement, pt. A ¶¶ 28-29, 48 (admitting corresponding paragraphs of Mun. Defs.' LR 56 Statement).

Moreover, as the United States Supreme Court has instructed, this Court must account for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.  In considering the present motion, the Court need not hypothesize circumstances in which verbal aggression, absent physical resistance and movement toward a room containing deadly weapons, would not justify the use of force.  Here, the undisputed evidence demonstrates that Defendants were in a stressful and uncertain situation involving illicit narcotics trafficking, a significant presence of weapons, and a screaming teenage suspect resisting commands and attempting to reach those weapons.  The Court acknowledges that excessive force claims are fact-specific and thus often unable to be resolved on summary judgment. *See Rogoz*, 796 F.3d at 246.  But in this case, the Court finds that no reasonable jury could conclude that Wilkinson's use of force, either in taking Plaintiff to the ground for handcuffing or through the later foot sweep, was objectively unreasonable.

Accordingly, the Court concludes that Wilkinson did not violate Plaintiff's constitutional rights and is entitled to qualified immunity.  In light of this finding, the Court need not reach the second prong of the qualified immunity test.  *See Raspardo*, 770 F.3d at 113; *O'Bert ex rel. Est. of O'Bert*, 331 F.3d at 37 (noting the substantial overlap between the first and second prongs of the qualified immunity analysis in excessive force cases).  To the extent the other four Defendants might have personally participated in the alleged conduct, they are likewise entitled to qualified immunity for the same reasons.

## V.    CONCLUSION

Because Plaintiff has failed to raise a genuine dispute of material fact with regard to personal participation by Luke, Pagan, Chapman, or Vazquez, and because Plaintiff has failed to

raise a genuine dispute of material fact with regard to the reasonableness of Wilkinson's use of force, the Municipal and State Defendants' motions for summary judgment, ECF Nos. 31 and 32, are **GRANTED.  The Clerk is directed to enter judgment in Defendants' favor and close the case.**

      **SO ORDERED** at Hartford, Connecticut, this 4th day of March, 2022.

                           */s/ Sarala V. Nagala*
                           SARALA V. NAGALA
                           UNITED STATES DISTRICT JUDGE